50 CCPA

**Application of John PAVLECKA.**
**Patent Appeal No. 6979.**

United States Court of Customs
and Patent Appeals.
June 20, 1963.

952

James E. Siegel, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This appeal is from that part of the decision of the Board of Appeals which affirmed the examiner's rejection of claims 60, 62, 64 to 68, 73 to 75 and 77 to 79 of appellant's application Ser. No. 265,316[1] for a patent for "Panel Structure." Twenty-six claims have been allowed.

Appellant's invention relates to a variety of arrangements for connecting abutted and opposed panels in forming wall structures which may be hollow or of single panel thickness. Stringers disposed along abutting panel edges or opposed panel faces bear interfitted loops or archways through which resiliently expansible keys similar to hinge pins are threaded. The opening defined by the interfitted archways may be round or square and is engaged by a key of corresponding cross-section. The key may be tubular member with a longitudinal slit or a strip bent into an S-shaped cross-section. The stringers may have shoulders flanking their archways and may have depressed archways alternating with their projecting archways. The keys, being capable of being sprung into the archway opening, are said to force the flanking shoulders on opposed stringers into tight abutment and the projecting archways against the depressed archways of the opposing stringers. Unitary stress members are said to result from the construction.

Reproduced below is Fig. 1 of appellant's application:

FIG. 1.

_____

1. Filed January 7, 1952.

That figure is described as "a perspective view of a portion of a panel structure showing spaced facing rows of panels in a dis-assembled condition except for a short length in the right hand corner, and showing stringers on the panels that employ longitudinal shoulders as the spacing, locating and abutting means."

Claims 60, 73 and 75 are representative and read:

"60. In a structure, a panel, a structural member extending in a frontally spaced apart relationship from said panel, a stringer on one face of said panel coextensive with said structural member, said stringer and said structural member having alternate lengthwise portions thereof forming an opening therethrough, faces borne on said stringer and on said structural member along said opening in confronting positions of each other, said faces being borne bilaterally along said opening in positions frontally equidistant from said panel, and a linear key having a free profile larger than said opening and having a tubular wall with at least one lengthwise break therein, said key being sprung into said opening slidably and drawing said stringer and said structural member into abutment with each other at said faces thereof by recoil against said portions thereof for constraining said structural member relatively immovably to said stringer and panel and causing said stringer and member to coact as a unitary stress member.

"73. In a structure, two panel units forming two spaced apart facing sides of a hollow wall or floor, each panel unit including a panel and stringers based thereon at and along two edges thereof and stringers based thereon apart from said edges, said stringers on both panel units being in opposed alinement with each other and having dual walls standing on the panel thereof and away therefrom supporting protruding lengthwise archways, said archways of each two stringers in alinement being congruently interfitted to form an opening therethrough, faces borne on said stringers in alinement along said opening therein in confronting positions of each other, tubular keys having a profile larger than said opening, and means for effecting resiliently a change in the relative size of said keys and the openings therefor for containing said keys slidably therein and cause them to exert opposite forces on said interfitted stringer archways and draw said stringers in alinement into abutment at said faces thereof whereby each two of said stringers will function as a unitary stress member of a box section in the wall or floor.

"75. In a structure, two panels meeting with each other at right angles along the edges thereof at a parting line, stringers extending on one face of said panels, said stringers being of substantially equal size and having walls standing thereon angularly side-by-side with each other at a plane through said parting line, on said walls said stringers bearing alternate lengthwise portions and having said portions interfitted congruently to form an opening through said stringers over said parting line, and a linear key having a free profile larger than said opening and having a tubular wall with at least one lengthwise break therein, said key being sprung into said opening slidably and by recoil against said interfitted stringer portions drawing said stringers together for causing said panels to cohere relatively immovably in said right-angle relationship at said edges thereof and for causing said stringers to coact as equal portions of a unitary stress member in the corner between said panels."

██ The following references were relied on by the examiner and the board:

McLaughlin 2,181,831 Nov. 28, 1939
French Patent 793,334 Nov. 16, 1935

With respect to the square shape of the stringer formation and key, the board referred to an earlier appeal of appellant[2] and adopted the conclusion reached therein, which conclusion involved reliance on the following reference:

Keller 2,107,418 Feb. 8, 1938

The opinion of the board in the earlier appeal and the Keller patent relied on therein constitute a part of the record before this court in the present case.[3]

The most pertinent features of the McLaughlin patent are shown in Figs. 1 and 2 thereof, reproduced below:

Fig. 1. Fig. 2.

These figures show a composite joist construction for joining adjacent floor panels. A deep joist element 12 and a shallow joist element 13 are secured to abutting ends of panels 10. Projecting loops 21, struck from a portion 18 of the deeper joist element, extend through opening 20 in portion 18 of the shallow joist element to form what resembles a hinge opening, into which a pin or

2. Appeal No. 272-51 (Patent file 3,012,-639).

3. Our review here must be of the board's decision as rendered including the reliance on its opinion in appellant's earlier appeal and the Keller patent necessarily involved in connection with that appeal. Even though such reliance might be regarded as involving a new ground of rejection, we believe that the pertinent portion of the opinion of the earlier appeal is properly before us now. If appellant had any doubts about the situation, he could have asked for reconsideration by the board or sought further prosecution before the examiner as provided in Rule 196(b), the latter by petition to the Commissioner if necessary. He did neither.

A motion on behalf of the Commissioner to add the board's opinion in Appeal No. 272-51 and the Keller patent to the printed record was denied by the court "with the understanding that, if necessary to properly deal with the issues in this appeal, the opinion of the Board and the Keller patent referred to in the motion may be referred to in the brief on behalf of the Commissioner of Patents and argument; and at the election of the Patent Office it may supply the court with five copies of said opinion and patent, in lieu of their addition to the printed record." The solicitor supplied copies of the opinion and patent in accordance with the court's permission.

key designated 24 may be disposed to hold the joist elements together as a unitary structure.

The McLaughlin patent specifies that the pin or key "may be expansible" and may be "of such length that when assembled the expansible section may hold the pin from easy withdrawal."

The French patent relates to metal structures "provided with internal reinforcements constructed and arranged in such a way as to reinforce with greatest efficiency possible said structures enabling them to resist traction, compression, torsion or other forces to which they may be subjected while in use." The structures are described as suitable for use as airplane wing connecting struts and other airplane elements but it is indicated that the invention may be applied to structures of other shapes and for other purposes.

One embodiment of the French patent construction is shown in Figs. 1 and 2 thereof, reproduced below:

Fig. 1.

Fig. 2.

Fig. 1 shows a sheet metal plate 1 bearing spaced box-type sheet metal reinforcements or stringers 4 and 5 which include hinge-like elements 6 and 7 dis-

posed centrally thereof. Spaced edge members designated 8 and 9 bear hinge elements 10 and 11. Bending the plate into the position shown in Fig. 2 causes interlocking of hinge elements 6 and 7 on the one hand, and 10 and 11 on the other hand, edges 14 being joined. The hinge elements are maintained in assembled position by means of rods 12 and 13 which it is stated may be "piano strings."

In modifications diclosed in the French patent, the opposing walls of the structure comprise separate panels bearing opposing members which incorporate the cooperating hinge elements.

The Keller patent shows, in adjoining figures, two wall units secured together by joints of the piano hinge type. The formation of one of those figures provides a round opening or archway receiving a round key while the formation of the other figure is of square configuration with a construction otherwise the same. In both forms, abutting shoulder portions flank the formation on the wall units.

In other figures, Keller shows elongated keys used in a modified arrangement for attaching panels. Shown are keys of rectangular cross-section, circular cross-section and of a cross-section having two straight sides and two concave sides. The latter key is provided with a longitudinal slot which is said to result in "a resilient key which may be readily forced into place."

The examiner rejected all the appealed claims as unpatentable over the French patent in view of McLaughlin. He considered it patentably immaterial whether the stringer elements 4 and 5 of the French patent are located intermediate the edges of the opposed panel surfaces or adjacent the edges thereof "as would be suggested by McLaughlin." He further regarded McLaughlin's disclosure of expansible pin 24 as suggesting the substitution of an expansible pin in the construction of the French patent.

The examiner further considered it only a matter of choice whether the pin was circular or some other equally conventional shape such as square.

The board considered the examiner's position with reference to claims 60, 62, 64 to 68, 73, 74 and 77 to 79 to be correct and sustained their rejection. In connection with the limitation to the square shape of the stringer openings and key, as appears in claim 62, it specifically adopted the conclusion reached in appellant's earlier appeal [4] which involved reliance on the Keller patent.

In sustaining the rejecting of claim 75, the board pointed out that McLaughlin contemplates uniting "floor to wall" and "wall to roof" units and noted that such formations obviously constitute right angular formations. It regarded the French patent as "an exposition of the side-by-side relationship of the panels in the wall" and held that the "substitution of the French patent type of interlocking means for that of McLaughlin would be obvious to one skilled in the art."

■ Appellant contends the claims at bar "embody several inventive concepts" which he lists as:

1. Two, and as many as six stringers or auxiliary stress members on panels in either side-by-side or in opposed relationship, or in a combination of these relationships, constrained relatively immovably by preloading forces originating in the particular type of interlocking key, for functioning as a unitary and primary stress member for the panels of properties increased by as much as the third power over a sum of their separate ones.

2. The use of a tubular resiliently contractible interlocking key of a relatively large section, easily insertable when contracted, in which condition it exerts recoiling forces upon the stringers and causes them to react against each other at abutment

4. See footnote 3.

faces and be held cohesively together by such preloading forces, as the most effective means for carrying out concept No. 1.

3. Panels meeting edge-to-edge, either coplanarly or at right angles, and rendered cohesive in those relationships at their edges by preloading forces generated by the particular interlocking key of concept No. 2.

4. Two species and one subspecies of abutment faces on the stringers constrained in side-by-side and in opposed relationships according to concept No. 1, of which species the pointed and flat-sided faces are particularly useful and effective because of the wedging of the stringers into each other that they produce.

5. The use of a square opening in the stringers coacting according to concept No. 1, the contracted key therein according to concept No. 2 having also a square shape for augmenting its immobilizing effect upon the stringers abutted at any one of the species of the faces of concept No. 4.

In support of his position, appellant urges both McLaughlin and the French patent are inadequate for the purposes relied on in the rejection. He questions the propriety of the substitution of the expansible key of McLaughlin in the French patent. He also argues that the shoulders of the opposed stringer members 4 and 5 of the French patent are shown spaced in the drawing and thus the construction of that reference does not function as a unitary stress member.

Appellant further argues against the pertinency of the McLaughlin patent because the elements 12 and 13 of its side-by-side arrangement are of unequal sizes. He additionally contends that "one invention that renders all of the claims at bar patentable is the combination of the abutted stringers with the particular resiliently contractable key."

Claims 60, 62, 64 to 68, 74 and 77 to 79 require no more than a single connection between either (1) a stringer on one panel and a "structural member," (2) a stringer on each of two spaced panels or (3) a stringer on each of two panels meeting with each other edge-to-edge. Claim 73 relates to a structure similar to that of the last group but includes a stringer connection at each edge of the panel and at a point apart from the edges.

From the modified forms of the French patent construction which show two separate opposed panels secured together through its door-hinge type of connection, it is obvious that the embodiment of Figs. 1 and 2 of that patent might employ two separate panels instead of the single panel 1 bent to provide surfaces or walls. Athough appellant argues that the shoulders of the stringers 4 and 5 of that structure are shown spaced from each other in Fig. 2, we consider it obvious, as did the board, that the shoulders on these elements should be in abutment to enable the structure to have the property, specified in the patent specification, of resisting "traction, compression, torsion or other forces to which" it "may be subjected while in use." Further, we agree with the statement of the examiner as follows:

> "It is considered, however, that the spacing shown is only for the sake of clarity since the thickness of the metal is sketchily represented by only a single line. Note, however, that opposed flanges 14 are also shown spaced apart while it is obvious that these flanges are intended to be in face-to-face contact."

Also, as noted by the solicitor, appellant himself has used the same expedient in certain figures of his own drawings, leaving space between elements actually in abutment to clarify the showing.

It seems clear to us that the French patent teaches the general stringer arrangement and construction involved in

the claims drawn to the opposed panel connection.

The McLaughlin patent suggests the basic edge-to-edge connection required in the other claims. Although, as pointed out by appellant, the adjacent floor panels 10 of McLaughlin are shown as separated, we think it would be obvious to a person of ordinary skill in the art that the McLaughlin teaching is equally applicable where it is desired to have the edges of the adjacent panels in tight abutment.

It is also apparent, from Figs. 1 and 2 thereof, that McLaughlin discloses shoulders positioned on the edge stringers adjacent the archway portions as well as the provision of depressed walls on the stringers at locations intermediate and in alignment with the outwardly extending archways.

We are also convinced that a person of ordinary skill in the art would find it obvious from the McLaughlin patent to employ a resilient key in the French patent. While appellant contends that patent is "vague, indefinite, conjectural and worthless because no teaching supports that term [expansible] as to how the pin is expansible," we do not find any merit in that attack on the reference. We regard McLaughlin's disclosure of an "expansible" key as clearly teaching a person skilled in the art to use an expansible or resilient key normally larger than the openings to effect a tight fit of the opposing elements. Even if such person had some doubt as to just how McLaughlin's illustrated key was formed, we think it would be obvious to him that a suitable "expansible" or resilient key could be made by providing a longitudinal slot in a tube of resilient metal. In using such a resilient key in the similar door-hinge type connection of the French patent, it would be obvious to him to make such key long enough to provide engagement with all the archways on the stringer members 4 and 5 of the French patent, as appears to be the case with the rods 12 and 13 of that patent.

In claim 62, appellant relies on the use of a square key with a stringer of corresponding shape, urging advantages to lie in that shape. He also refers to that feature as forming "an essential part of the species of claims 67, 78 and 79." Concerning the feature in question, the board stated:

"The issue of the square shape of the stringer and structural member portions, as found in claim 62, was essentially disposed of in appellant's Appeal No. 272–51 (Patent file 3,-012,639), denied September 20, 1960. We reach a similar conclusion here."

As noted above, the decision in the earlier appeal relies on the Keller patent. More particularly, that decision states:

" * * * The disclosure of Keller is a very good teaching that in a structure exactly similar to that of McLaughlin [No. 2,181,831] the use of rectangular archways with flat positioning faces instead of circular archways is a matter of choice within the skill of the art. * * * "

We think that Keller's disclosure of the use of either round or square keys in a door-hinge type panel connection would make it obvious to use a square configuration or other conventional shape in either the French patent or the McLaughlin patent.

After careful consideration of the record in the light of appellant's arguments, we are convinced that claims 60, 62, 64 to 68, 73, 74 and 77 to 79 do not define patentably over the French patent in view of McLaughlin. So far as those claims are concerned, appellant has merely combined features of the references in an obvious manner to provide a structure which provides no unobvious results. The mere provision of a plurality of spaced stringers to join a pair of opposed panels as additionally recited in claim 73 certainly does not involve anything unobvious.

Claim 75, in reciting a connection between two panels meeting at a right angle, presents an additional issue,

however. While McLaughlin does refer to uniting "floor to wall" and "wall to roof" units, he refers to the use of interlocking and keying units of the type disclosed in another application for that purpose, which units apparently are different from those of his patent of record. We do not find any suggestion in the record of using the connecting means of that patent or that of the French patent for joining panels at right angles. In the absence of such a suggestion, we are obliged to reverse the decision of the board as to claim 75.

The decision is affirmed as to claims 60, 62, 64 to 68, 73, 74 and 77 to 79 and reversed as to claim 75.

Modified.