56 CCPA

**Application of John C. JUREIT.**

**Patent Appeal No. 8171.**

United States Court of Customs and Patent Appeals.

May 29, 1969.

Leonard F. Stoll, Robert E. LeBlanc, LeBlanc & Shur, Washington, D. C., for appellant.

Joseph Schimmel, Washington, D. C., for Commissioner of Patents, Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, HOLTZOFF and McLAUGHLIN, Judges sitting by designation, ALMOND and BALDWIN, Associate Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals which affirmed the examiner's rejection on prior art under 35 U.S.C. § 103 of claims 23–28 in appellant's application [1]

I. Serial No. 293,949 filed July 10, 1963.

for "Connectors, Wooden Joints, and Methods of Fabricating." No claim has been allowed.

The invention described in appellant's application is shown in Figure 1 thereof as follows:

FIG.1

The plate seen is a metal connector adapted to forming joints between wooden structural members, the abutting ends of which are brought together and secured by application of the plate. Plate 18 itself is preferably formed from mild steel of 20-gauge thickness and has struck therefrom a plurality of rows 20, 22, 24 and 26 of slender, elongated, nail-like teeth which leave parallel rows of elongated slots. The teeth, provided with diagonally-cut or scarfed points, have a density of 5 to 7 teeth per square inch of plate surface.

Claims 23 and 24 are drawn to the connector plate as an article of manufacture. Claims 25–28 are drawn to a preliminary wooden joint wherein only portions of the plate have teeth struck thereform embedded in the wooden members. All of the claims recite a thickness of 20 gauge and a density of at least five teeth per square inch of plate.

Claim 23 is reproduced as illustrative:

23. A connector for forming wooden butt joints comprising: a sheet-metal plate of a thickness of approximately 20 U. S. Standard gauge having struck therefrom at least three rows of slender, elongated nail-like teeth which leave rows of slots, the slots in one row extending away from the teeth in the opposite direction to the slots in the two adjacent rows, said teeth extending from said plate substantially parallel to one another for embedment in said wooden members, and terminating in diagonal-pointed ends, the diagonal faces of transversely-aligned teeth in alternate rows being so disposed that if the diagonal surfaces of said teeth were extended they would intersect intermediate said alternate rows at a point spaced from said plate by a distance greater than the length of said teeth, said teeth being disposed in transversely-aligned

rows so that said slots leave solid strands of transversely-extending metal, the ratio of slot length to the width of said solid metal strand being approximately 1.9, said teeth being so disposed on said plate as to provide at least five teeth per square inch of plate.

The references relied upon below are:

| | | | |
|---|---|---|---|
| Sanford | | 2,937,418 | May 24, 1960 |
| Menge | | 3,011,226 | December 5, 1961 |
| Nulick | | 3,068,738 | December 18, 1962 |
| German Patent | DAS | 1,018,208 | October 24, 1957 |

———◆———

Sanford discloses connector plates for wooden structural members. The plates are of 20-guage sheet metal having struck therefrom short protruding teeth to be embedded in the wooden members.

Menge discloses connector plates for joining wooden structural members. The plates are 12 to 16-gauge metal having struck therefrom pointed teeth producing alternate rows of oppositely extending slots.

Nulick relates to assembly of wooden members disclosing connector plates having alternate rows of teeth with oppositely extending points or scarfed ends.

The German Patent (German) teaches fasteners for attaching panels to a support surface and having teeth with oppositely extending points wherein the joint is formed by first embedding only a portion of the teeth in a structural member.

The examiner rejected claims 23 and 24 as unpatentable over Menge in view of Nulick, reasoning that it would be obvious to one skilled in the art to select the particular gauge or thickness of the metal connector with reference to the type of metal utilized and the type of wood to be joined. He applied the teaching of Sanford to show that it is a common practice in the subject art to form a connector plate from 20-gauge sheet metal. It was the examiner's view that the dimensional relationships and the spacing of the teeth did not constitute patentable distinctions over Menge but he relied on Nulick to show the particular shape of the teeth.

Claims 25 and 26 were rejected by the examiner as unpatentable over Menge in view of German, pointing out that these claims were not drawn to a completed joint but merely define the configuration of the connectors following the first step in the method of applying the connector to the wooden members, i. e. the nailing down of the opposite ends of the connector. The examiner reasoned that inasmuch as German shows a connector having ends bent downwardly permitting the end teeth to be driven prior to those intermediate the ends, it would be obvious to bend the ends of the Menge plate as taught by German.

In the rejection of claims 27 and 28 the examiner applied Menge in view of German and in view of Nulick, holding that it would be obvious to bend the Menge plate as taught by German permitting the end teeth to be first driven and further obvious to form the Menge teeth with inclined ends as taught by Nulick. In affirming the rejection of all of the claims, the board adopted, in essence, the rationale employed by the examiner.

We think it clear from the record before us that the design features of appellant's claimed subject matter which differ from the cited prior art would be obvious to one of ordinary skill in the art. The Menge and the Nulick connector plates conform in type to that claimed by appellant. An artisan with the Menge

disclosure before him would readily observe a plate with rows of teeth which are spaced and approximately shaped as called for by appellant's claims. The Menge teeth, as are appellant's, are struck from the plate revealing alternate rows of oppositely extending slots. The same may be said of Nulick. We consider it of no material significance whether the slots are depicted in the vertical or horizontal. This arrangement strikingly corresponds to the arrangement shown in appellant's Fig. 1 with alternate horizontal rows of oppositely extending slots. While the Menge teeth may be said to have arrow-shaped, diagonally-pointed ends approximately meeting the requirements of appellant's claims, Nulick, however, discloses teeth having diagonally-pointed ends shaped as those disclosed by appellant with alternate rows of teeth pointing to a common intersection as called for by the appealed claims. There appears to be no question that the length of the teeth in Menge meets the requirements of appellant's claims. As pointed out by the solicitor, we think it reasonable to assume that the drawing (Fig. 2) of the Menge plate is actual size since it is designed for 2 x 4 and smaller studs. Assuming that the Menge connector as shown in the drawings of that reference appears in actual size covering about four square inches, it would have approximately six teeth per square inch of plate surface, thus meeting the requirement of appellant's claims. We are not aware of, nor has it indicated, that there is any discernible difference in the ratio of slot length to width of metal between the rows of slots in the Menge connector from that claimed for appellant's connector. Menge states that in "most cases a twelve to sixteen gauge sheet metal plate is suitable," the material may vary in thickness according to the application or use of the connector. Appellant's claims call for a 20-gauge plate thickness (about 0.04 inch) which is two-thirds the thickness of the Menge plate of 16 gauge (about 0.06 inch). We are persuaded that the ordinary artisan would be well aware that the thickness of the plate can and should vary with the type of the metal of the connector and the type of wood to which it is to be applied. However, as noted, Sanford teaches a plate thickness of 20 gauge for a connector and supports the conclusion that the ordinary artisan would use a plate of the thickness claimed by appellant if the application so required. German, although directed primarily to panel fasteners, clearly suggests the concept of a partially embedded connector in its teaching of applying the fastener to the structural member by first embedding the teeth adjacent the end followed by embedding the intermediate teeth.

Our review of appellant's brief and consideration of arguments advanced before us are not persuasive of reversible error in the decision of the board holding the appealed claims unpatentable over the applied references under 35 U.S.C. § 103.

We have considered and find no merit in appellant's contention that the Sanford reference was not properly applied by either the examiner or the board and that he was not "afforded a sufficient opportunity to present evidence and arguments" relative thereto. The record amply refutes appellant's contention. The pertinency of Sanford was clearly stated in the final rejection that it was "made of record to show that it is common to form a connector from 20 gauge sheet-metal * * *." Appellant described Sanford in his brief before the board as one of the references relied upon by the examiner and argued its application as a reference. The examiner listed Sanford in his Answer as one of the references relied upon as prior art. Appellant argued the application of Sanford in his reply brief. In short, the record is replete with evidence that Sanford was applied throughout the proceedings below and that appellant was fully apprised of the nature and extent of its application. There is no justification even for an intimation that the

board made any new rejection predicated on Sanford. The observation of this court in In re Pavlecka, 318 F.2d 951, 50 CCPA 1390, is pertinent here:

If appellant had any doubts about the situation, he could have asked for reconsideration by the board or sought further prosecution before the examiner as provided in Rule 196(b), the latter by petition to the Commissioner if necessary. He did neither.

The decision of the board is affirmed.

Affirmed.